UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
VICTORIA FEROCE,

                Plaintiff,

       -against-

BLOOMINGDALE'S INC.,
as a Division of Macy's Inc.,

                Defendants.
----------------------------------------------------------X

**AMENDED ORDER**
12-CV-5014 (SJF)(GRB)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★ JAN 24 2014 ★

LONG ISLAND OFFICE

FEUERSTEIN, J.

On October 5, 2012, plaintiff Victoria Feroce ("plaintiff") commenced this action against defendant Bloomingdale's Inc. ("Bloomingdale's" or "defendant"), alleging that Bloomingdale's discriminated against her on the basis of religion in violation of Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, and on the basis of gender in violation of the New York State Human Rights Law. [Docket Entry No. 1]. Bloomingdale's is a wholly-owned subsidiary of Macy's Retail Holdings, Inc., which is a wholly-owned subsidiary of parent company Macy's, Inc ("Macy's"). Declaration of Robert Noeth in Support of Defendant's Motion to Compel Arbitration and Dismiss the Complaint ("Noeth Decl."), ¶ 2.[1] Now before the Court is defendant's motion to compel arbitration and dismiss the complaint. [Docket Entry No. 16]. For the reasons that follow, defendant's motion is granted only insofar as it seeks to compel arbitration; the case is stayed pending arbitration.

---

[1] Macy's was formerly known as Federated Department Stores, Inc. ("Federated"). In June 2007, Federated changed its corporate name to Macy's. Noeth Decl. ¶ 2. This opinion will refer to the company as Macy's to avoid confusion.

1

I.  Background

Plaintiff began working at the Bloomingdale's store located at 630 Old Country Road, Garden City, New York 11530 (the "Roosevelt Field Store") in December 1991. Declaration of Victoria Feroce in Support of Plaintiff's Memorandum in Opposition to Defendant's Motion to Compel Arbitration and Dismiss the Complaint ("Feroce Decl."), ¶ 2; Declaration of Beth Fallacaro in Support of Defendant's Motion to Compel Arbitration and Dismiss the Complaint ("Fallarco Decl."), ¶ 2. Plaintiff has taken two (2) maternity leaves of absence, the first of which began on April 16, 2003 and ended on June 22, 2003. *Id.* ¶ 3. Plaintiff's second maternity leave began on December 8, 2004 and ended forty-two (42) days later, on January 19, 2005. *Id.*

A.  Solutions InSTORE Early Dispute Resolution Program

In the fall of 2003, Macy's developed and implemented the Solutions InSTORE Early Dispute Resolution Program (the "Program"), which became effective on January 1, 2004 for all employees of Macy's subsidiaries, including Bloomingdale's. Noeth Decl. ¶¶ 4, 14. The Program is a comprehensive early dispute resolution that aims to "surface and resolve disputes as early and fairly as possible." *Id.* The Program consists of four (4) separate steps for the resolution of work related issues. *Id.* ¶ 7. While Macy's is bound by the decision made at each of the four (4) steps, the employee may appeal each decision and advance to the next step of the Program. *Id.* ¶ 8. The fourth and final step is arbitration.

The first step encourages employees to bring any complaints or concerns to a supervisor or a local management team member. *Id.* ¶ 9. If the employee is not satisfied with the outcome of step one, that employee may submit a written complaint to a senior human resources executive for investigation. *Id.* If the employee is not satisfied with the decision of the senior human resources executive in step two, and the grievance involves legally protected rights, he or she

may proceed to step three. *Id.* The third step permits an employee to submit a written request for reconsideration to the Office of Solutions InSTORE, which will be decided by either a volunteer Peer Review Panel or by the Office of Solutions InSTORE Program Manager. *Id.* Claims involving harassment, discrimination, a reduction in force, layoff, or alleged statutory violations are not eligible for Peer Review and are handled by the Office of Solutions InSTORE Program Manager. *Id*; Noeth Decl., Ex. A at 4.[2] If the employee is not satisfied with the outcome of step three, he or she may proceed to binding arbitration before an outside neutral arbitrator, the fourth and final step ("Step Four Arbitration"). Noeth Decl. ¶ 9.

Employees are not required to participate in Step Four Arbitration if they have submitted a written form to the Office of InSTORE Solutions within a prescribed time period. Declaration of Lloyd Dalzell in Support of Defendant's Motion to Compel Arbitration and Dismiss the Complaint ("Dalzell Decl."), ¶ 6. If an employee does not opt out of Step Four Arbitration within the required time, the employee agrees to be contractually bound by Step Four Arbitration. Noeth Decl. ¶ 12. An employee's decision to opt out of Step Four Arbitration is confidential and local management remains unaware of the employee's election. *Id.* ¶ 10.

Step Four Arbitration, as set forth in Article 2 of the Solutions InSTORE Plan Document ("Plan Document"), provides that "all employment-related legal disputes, controversies or claims arising out of, or relating to, employment or cessation of employment shall be settled exclusively by final and binding arbitration by the American Arbitration Association." Ex. A at 5. "[T]hese claims include, but are not limited to, claims arising under . . . Title VII of the Civil Rights Act of 1964, as amended, including the amendments of the Civil Rights Act of 1991, . . . state

---

[2] Exhibits to the Noeth Declaration are hereinafter referred to as "Ex. __."

discrimination statutes, state statutes, and/or common law regulating employment termination." *Id.* at 6.[3]

If an employee has not opted out of Step Four Arbitration, the employee's claims must be resolved through arbitration and may not be pursued in court. As the Plan Document explains, "[b]y agreeing to arbitration," "neither the Associate nor the Company can file a civil lawsuit in court against the other party." *Id.* at 7. "If a party files a lawsuit in court to resolve claims subject to arbitration, both agree that the court shall dismiss the lawsuit and require the claim to be resolved through the Solutions InSTORE program." *Id.*

B. Implementation of the Program

The Office of Solutions InSTORE worked with each of Macy's subsidiaries, including Bloomingdale's, "to ensure that all employees were educated about the Program, including the employees' right to opt out of binding arbitration." Noeth Decl. ¶ 15. Each Bloomingdale's location, including the Roosevelt Field Store, held informational sessions designed to "educate the employees about the Program and inform them about the future mailing they would be receiving from the Office of Solutions InSTORE." *Id.* ¶ 16. The informational sessions explained "how employees could choose to accept or decline to participate in [Step Four Arbitration]" and detailed the opt out procedure. Dalzell Decl. ¶¶ 5-6. All employees were required to attend one of the informational sessions. Noeth Decl. ¶ 17. As a Bloomingdale's employee at the Roosevelt Field Store during the time these informational sessions were held, plaintiff was required to attend one of the informational sessions. Dalzell Decl. ¶ 7.

---

[3] Article 2 further states that "[n]othing in these Solution InSTORE Early Dispute Resolution Rules and Procedures prohibits an Associate from filing a charge or complaint with a government agency such as the EEOC." Noeth Decl., Ex. A at 7. However, "upon receipt of a right to sue letter . . . , the Associate's claim becomes subject to arbitration." *Id.* Plaintiff admits thtat she received a notice of right to sue from the EEOC. Complaint, ¶ 6.

4

During the informational sessions, the Roosevelt Field Store distributed materials from the Office of Solutions InSTORE to each employee, including a detailed informational brochure entitled "Early Dispute Resolution," a letter from Macy's President and Chief Executive Officer, and an arbitration fact sheet. Dalzell Decl. ¶¶ 3-4; *see* Exs. B, C. The "Early Dispute Resolution" brochure advised employees that "[i]f, however, you decide you would like to be excluded from participating in and receiving the benefits of Step 4, we will ask you to tell us in writing by completing a form that will be mailed to all employees' homes this Fall." Ex B at 10. Employees at the informational sessions were also shown a video about the Program. Noeth Decl. ¶ 19, Ex. D; Dalzell Decl. ¶ 4. The Office of Solutions InSTORE also provided a poster to be displayed that explained the Program's four (4) step process. Noeth Decl. ¶ 20, Ex. E.

1. The September 2003 Mailing

On September 26, 2003, all Bloomingdale's employees, as of August 31, 2003, were sent materials regarding the Program (the "September 2003 Mailing") to the address specified for each employee in Macy's internal personnel database. Noeth Decl. ¶ 23. According to the list of recipients maintained by Macy's, the September 2003 Mailing was sent to plaintiff at 253 Ribbon Street, Franklin Square, New York, 11010. *Id.* ¶¶ 26-27; Ex. H. Macy's records do not indicate that the September 2003 Mailing sent to plaintiff was returned as undeliverable. Noeth Decl. ¶¶ 28-29.

The September 2003 Mailing included the Plan Document, an election form (the "2003 Opt Out Form"), and a pre-addressed postage-paid return envelope (altogether, the "September 2003 Mailing"). *Id.* ¶ 25; Exs. A, F, G. The 2003 Opt Out Form instructed employees that in order to decline Step Four Arbitration, "your completed form must be returned to the Office of Solutions InSTORE and postmarked no later than October 31, 2003." Ex. F. The 2003 Opt Out

5

Form further advised employees that if they did not receive a written confirmation of receipt by Solutions InSTORE by December 29, 2003, they should contact Solutions InSTORE by using the email address or telephone number provided. *Id.*

Macy's records indicate that plaintiff did not return the 2003 Opt Out Form. Noeth Decl. ¶¶ 31-33. Furthermore, Macy's records reveal that plaintiff did not receive a written confirmation nor did she contact the Office for Solutions InSTORE regarding her failure to receive written confirmation of her election to opt out of Step Four Arbitration. *Id.* ¶¶ 34-36, 51.

In January 2004, Macy's sent a brochure entitled "You're In Good Company" ("January 2004 Brochure") to those employees who did not opt out of Step Four Arbitration following the September 2003 Mailing. *Id.* ¶ 37. The January 2004 Brochure stated "[w]e're pleased you'd like to enjoy the benefits of all 4 Steps of the program," and listed all four (4) steps, including Step Four Arbitration. Ex. J. Macy's records indicate that the January 2004 Brochure was sent to plaintiff at the same address as the September 2003 Mailing, and that plaintiff did not contact the Office for Solutions InSTORE to object to her inclusion in Step Four Arbitration. Noeth Decl. ¶ 51; Ex. K.

### 2. The October 2004 Mailing

In order to provide employees with a second opportunity to opt out of Step Four Arbitration, Macy's sent additional materials to employees in October 2004 (the "October 2004 Mailing"), including brochures, a new opt out form with a return postmark deadline of November 15, 2004 (the "2004 Opt Out Form"), and a pre-addressed postage-paid return envelope. Noeth Decl. ¶¶ 39, 42; Exs. L, M., N. The October 2004 Mailing was only sent to those employees who had not opted out of Step Four Arbitration following the September 2003 Mailing. Noeth Decl. ¶¶ 40, 41. The October 2004 Mailing stated, "[l]ast year when we

6

introduced our new early dispute resolution program, Solutions InSTORE, . . . you elected to be covered by all 4 steps of the program." Ex. L. The October 2004 Mailing further advised employees that "if you decide you would like to be excluded from participating in and receiving the benefits of Step 4: Arbitration, we will ask you to tell us now in writing by completing the enclosed form and returning it to the Office of Solutions InSTORE by the date indicated on the form." *Id.*

Macy's records indicate that the October 2004 Mailing was sent to plaintiff and was not returned as undeliverable, and that plaintiff did not return the 2004 Opt Out Form. Noeth Decl. ¶¶ 43-45; Ex. O. Just as it did following the September 2003 Mailing, Macy's sent confirmation letters to those employees who opted out of Step Four Arbitration. Noeth Decl. ¶ 46. Plaintiff did not receive a letter confirming her election to opt out of Step Four Arbitration, nor did she contact the Office of Solutions InSTORE regarding her failure to receive a confirmation. *Id.* ¶¶ 47-48, 51. Furthermore, Macy's records indicate that plaintiff never contacted the Office for Solutions InSTORE to object to her inclusion in Step Four Arbitration. *Id.* ¶ 51.

II.     Standard of Review

On a motion to compel arbitration brought under Section 4 of the Federal Arbitration Act ("FAA"), "the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (citations omitted). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Id.* The party resisting arbitration "bears the burden of showing that he is entitled to a jury trial." *Doctor's Associates, Inc. v. Distajo*, 107 F.3d 126, 129 (2d Cir. 1997) (citations omitted). "If the party seeking arbitration has substantiated the entitlement [to arbitration] by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit

7

evidentiary facts showing there is a dispute of fact to be tried." *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995); *see also Doctor's Associates*, 107 F.3d at 129-30 ("As when opposing a motion for summary judgment under Fed. R. Civ. P. 56, the party requesting a jury trial must 'submit evidentiary facts showing that there is a dispute of fact to be tried.'") (citations omitted).

III. Discussion

A. The Federal Arbitration Act

The FAA embodies the "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). "The overarching purpose of the FAA, evident in the text of §§ 2, 3 and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1748, 179 L.Ed.2d 742 (2011).

Arbitration clauses in employment contracts, like the one at issue here, are governed by the FAA. *EEOC v. Waffle House*, 534 U.S. 279, 289, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) ("Employment contracts, except for those covering workers engaged in transportation, are covered by the FAA."). "Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial contracts." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123, 121 S.Ct. 1302 (2001). Where a valid arbitration agreement exists, the FAA requires that federal statutory claims arising from an employment relationship, including Title VII claims, be subject to mandatory arbitration. *See e.g., Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483, 487-88 (2d Cir. 2013) (holding district court erred in denying motion

8

to compel arbitration of Title VII claim); *Desiderio v. Nat. Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 206 (2d Cir. 1999) (holding title VII claims subject to mandatory arbitration).

Pursuant to the FAA, arbitration must be compelled where: (1) a valid agreement to arbitrate exists; and (2) the agreement encompasses the claims at issue. *See Bank Julius Baer & Co., Ltd. v. Waxfield Ltd.*, 424 F.3d 278, 281 (2d Cir. 2005); *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 45 (2d Cir. 1993).

### 1. Validity of the Arbitration Agreement

"Because an agreement to arbitrate is a creature of contract . . . the ultimate question of whether the parties agreed to arbitrate is determined by state law." *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) ("When deciding whether the parties agreed to abitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."). Plaintiff does not dispute that New York law applies.

#### a. Presumption of Receipt of Mailings

Plaintiff argues that "there is no agreement between the parties to arbitrate" because she did not receive the September 2003 Mailing or the October 2003 Mailing. Plaintiff's Memorandum and Declaration in Opposition to Defendant's Motion to Compel Arbitration and Dismiss Complaint ("Opp."), at 6, 7. However, "New York law has established a presumption that a party has received documents when mailed to the party's address in accordance with regular office procedures." *Manigault v. Macy's East, LLC*, 318 F. App'x 6, 7 (2d Cir. Mar. 25, 2009) (citing *Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 817 (2d Cir. 1985)).

Macy's has submitted declarations stating that plaintiff was mailed the September 2003 Mailing and the October 2003 Mailing at the address specified in its internal personnel database, and that its records reflect that the mailings to plaintiff were not returned as undeliverable. Noeth Decl. ¶¶ 26-29, 43-45; Exs. H, O. Furthermore, Macy's has submitted an employee declaration detailing the procedures followed in the September 2003 Mailing and the October 2004 Mailing. Declaration of Tom Schneider in Support of Defendant's Motion to Compel Arbitration and Dismiss the Complaint ("Schneider Decl."), ¶¶ 8-21. These submissions create a rebuttable presumption that plaintiff received the September 2003 Mailing and October 2003 Mailing. *See e.g., Manigault*, 318 F. App'x at 7 ("[T]he affidavits of Macy's personnel created a rebuttable presumption that [plaintiff] received the program information."); *Ma v. Merril Lynch, Pierce, Fenner & Smith*, Inc., 597 F.3d 84, 92 (2d Cir. 2010) ("[A] presumption of receipt arises where, as here, the record establishes office procedures, followed in the regular course of business, pursuant to which notices have been addressed and mailed."); *Akey v. Clinton Cnty., N.Y.*, 375 F.3d 231, 235 (2d Cir. 2004) ("Where, as here, the [defendant] provides evidence that the [documents] were properly addressed and mailed in accordance with regular office procedures, it is entitled to a presumption that the [documents] were received."). Plaintiff's contention that she did not receive the two (2) mailings is insufficient to rebut this presumption. *See Manigault*, 318 F. App'x at 7 ("The evidence offered by [plaintiff], consisting of her own denial of receipt of the mailing . . . is insufficient to rebut the presumption that she received the mailing."); *see also Akey*, 375 F.3d at 235 ("Denial of receipt, without more, is insufficient to rebut the presumption.").

### b. Manifestation of Assent to Arbitration

Under New York law, "[a] contract may be formed by words or by conduct that demonstrate the parties' mutual assent." *Manigault*, 318 F. App'x at 8. "A party's conduct indicates assent when he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents." *Teah v. Macy's Inc.*, 2011 WL 6838151, at *4, No. 11-CV-1356 (E.D.N.Y. Dec. 29, 2011) (internal quotation marks and citations omitted). The Second Circuit has already applied New York law in cases involving employees who, like plaintiff, began working for Macy's prior to the inception of the Program, and who were later notified of their right to opt out of Step Four Arbitration, but failed to return the opt out form. *See Manigault*, 318 F. App'x at 8 (holding that plaintiff who "received the mailing that contained [information regarding the Program], continued with her employment, and did not opt out of arbitration" had agreed to arbitration); *DuBois v. Macy's East Inc.*, 338 F. App'x 32, 34 (2d Cir. July 9, 2009) ("As [plaintiff] continued employment with Macy's after receiving notice of the new dispute resolution program and as he has not presented sufficient evidence to allow a reasonable factfinder to conclude that he opted out of the associated mandatory arbitration, his continued employment constituted acceptance of the modification of the terms of his employment to include such mandatory arbitration.").

Plaintiff consented to arbitration by failing to opt out of Step Four Arbitration after being informed of the Program and opt out procedure through multiple channels, including: (1) a presentation for all Roosevelt Field Store employees, at which employees were shown a video and received various materials regarding the Program and Step Four Arbitration; (2) the September 2003 Mailing; (3) the January 2004 Brochure; and (4) the October 2004 Mailing. Despite being notified on numerous occasions that she would be bound by Step Four Arbitration

unless she completed and returned an opt out form, plaintiff did not return the 2003 Opt Out Form or the 2004 Opt Out Form, and continued to work at Bloomingdale's. Accordingly, plaintiff's conduct manifested her assent to Step Four Arbitration[4] and a valid agreement to arbitrate exists.

2. Scope of the Arbitration Agreement

The Plan Document clearly states that Step Four Arbitration applies to "all employment-related legal disputes," including "Title VII of the Civil Rights Act of 1964," "Civil Rights Act of 1991," "state discrimination statutes," and "state statutes." Ex. A at 5-6. Plaintiff now asserts claims arising from her employment with Bloomingdale's pursuant to Title VII of the Civil Rights Act of 1964, Title I of the Civil Rights Act of 1991, and the New York State Human Rights Law. These claims squarely fall within the scope of the arbitration agreement, which mandates that such claims "be settled exclusively by final and binding arbitration." *Id.* at 5.

B. Stay or Dismissal of Present Action

In concluding that all of plaintiff's claims are subject to mandatory arbitration, the only remaining issue is whether the Court must stay the proceedings pending arbitration or if it may dismiss the action. Pursuant to the arbitration agreement, the parties agreed that "the court shall dismiss [any] lawsuit" filed by either party that is subject to arbitration. Ex. A at 7.

---

[4] Plaintiff also argues that there is no agreement to arbitrate because she did not receive an additional opportunity to opt out of Step Four Arbitration following her return to work after her second maternity leave. Opp. at 6. Plaintiff relies on the following language from the Plan Document: "If the Associate becomes re-employed with the Company following a break in service of more than sixty (60) days, the Associate will be treated as a new hire and will be eligible to receive a new Arbitration Election Form." Ex. A at 5. While plaintiff contends that her second maternity leave lasted from December 2004 until March 2005, Feroce Decl. ¶ 3, the record demonstrates that plaintiff's leave began on December 8, 2004 and ended forty-two (42) days later on January 14, 2005. Fallarco Decl. ¶¶ 3, 8. Even assuming, *arguendo*, that a maternity leave constitutes a "break in service" as contemplated by the Plan Document, plaintiff's forty-two (42) day maternity leave was not "more than sixty (60) days," and therefore would not entitle her to a new opportunity to opt out of Step Four Arbitration. Ex. A at 5.

12

Bloomingdale's argues that "because no useful purpose will be served by staying this action," the Court "should exercise its discretion and dismiss the Complaint." Opp. at 21.

Under the FAA, "a district court must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding." *McMahan Sec. Co. L.P. v. Forum Capital Mkts. L.P.*, 35 F.3d 85-86 (2d Cir. 1994) (citing 9 U.S.C. § 3). A district court's order staying an action pending arbitration is an unappealable interlocutory order under Section 16(b) of the FAA. *Salim Oleochemicals v. M/V Shropshire*, 278 F.3d 90, 93 (2d Cir. 2002). While the Court has discretion to dismiss an action, rather than grant a stay, where all of the claims are subject to arbitration, "a dismissal renders an order appealable under § 16(a)(3)." *Id.* Appellate review of a dismissal order may cause "unnecessary delay of the arbitral process." *Id.* Upon consideration of the potential "[u]nnecessary delay of the arbitral process through appellate review," the Court declines to dismiss the action. *Id.*; *see Teah*, 2011 WL 6838151, at *8 (E.D.N.Y. Dec. 29, 2011) ("In light of the fact that the Second Circuit has expressed the view that '[u]nnecessary delay of the arbitral process through appellate review is disfavored,' the Court believes a stay is more appropriate than the dismissal requested by Macy's.") (quoting *Salim Oleochemicals*, 278 F.3d at 93); *Guida v. Home Sav. of Am., Inc.*, 793 F. Supp. 2d 611, 620 (E.D.N.Y. 2011) ("[T]he Court believes that the more appropriate action is to stay the proceedings and compel arbitration, particularly to promote expeditious resolution of this dispute.").

IV. Conclusion

For the foregoing reasons, the Court grants in part and denies in part defendant's motion to compel arbitration and dismiss the complaint. Plaintiff's claims are hereby referred to arbitration. This action is stayed pending completion of the arbitration pursuant to Section 3 of

the FAA. Counsel for Bloomingdale's is directed to file a letter with the Court no later than June 24, 2014, advising the Court as to the status of the arbitration.

**SO ORDERED.**

                                                                                s/ Sandra J. Feuerstein

                                                                               Sandra J. Feuerstein
                                                                               United States District Judge

Dated: January 24, 2014
       Central Islip, New York